# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 27, 2012

## STATE OF TENNESSEE v. KRYSTAL BOWMAN

**Appeal from the Criminal Court for Hamilton County**
**No. 272778      Don W. Poole, Judge**

**No. E2011-01906-CCA-R3-CD - Filed August 13, 2012**

The defendant, Krystal Bowman, appeals the Hamilton County Criminal Court's denial of judicial diversion for her conviction of theft of property valued at $10,000 or more but less than $60,000. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, Krystal Bowman.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William H. Cox, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, originally charged with five counts of forgery and one count of theft of property valued at $60,000 or more, pleaded guilty to one count of theft of property valued at $10,000 or more but less than $60,000 in exchange for a sentence of four years and payment of $44,000 in restitution. The State dismissed the remaining counts of the indictment. Pursuant to the plea agreement, the defendant reserved the right to request judicial diversion at her sentencing hearing.

The State detailed the terms of the plea agreement, explaining that in exchange for her plea of guilty to one count of theft of property valued at $10,000 or more but less than $60,000, the defendant would "receive four years in the Department of Correction[],

suspended for a period of six years on supervised probation. Restitution in the amount of forty-four thousand dollars." The State also provided the stipulation of facts at the hearing:

> [The proof] would show if brought before the [c]ourt, Ms. Bowman worked for in a bookkeeping capacity, other functions for a Crown Marketing Group which is in North Chattanooga. She worked for them for a two, three year period of time. During her employment there she began drawing off commissions and then writing other payroll checks in and above the amount that was intended to her for her and cashed those. It was sometime before they discovered this error. Originally when they contacted the police, they thought they could work it out between the employer and the employee. That proved I guess at that point not to work out and she was indicted for this.

> They have indicated the theft may be well in excess of that but that's all essentially they could prove. It was somewhere in the neighborhood of about seventy thousand. However, insurance paid them back a considerable amount, somewhere between twenty-five and twenty-six thousand. That's how we arrived at the forty-four thousand figure.

The State opposed the defendant's bid for diversion on the basis of "the circumstances of the case and the ongoing nature of the theft, over a two year period."

The 32-year-old defendant testified that she began working for Crown Marketing in 2008 and that during her employment she embezzled money from the business. She said that after her crimes were discovered, one of the company's owners wanted to press charges against her but the other did not. The defendant claimed that some of the money that the company claimed she owed them was actually money that she had earned as commission. She said that she nevertheless agreed to the $44,000 restitution amount because she knew that she had hurt the company financially.

The defendant said that she wanted a sentence of diversion so that her future employment would not be hampered. She said, "I am used to being able to do accounting work and I'm pretty sure I won't be able to go back into accounting." Explaining her crimes, she testified, "[M]y husband had lost his job and I got into some financial problems and so I was just going to borrow against my commissions and then I just got in over my head and I couldn't figure out how to get out."

During cross-examination, the defendant said that she began embezzling money approximately one and one half years into her employment. She said that she embezzled the money by cutting herself checks for commissions that she had not earned and by inflating the figures on her payroll checks. In addition to writing checks to herself as an authorized signatory, the defendant used signature stamps bearing the signatures of the company's owners to write checks to herself. She acknowledged that the owners of the company had voluntarily assisted her financially. She said that she used some of the money to pay medical bills associated with the treatment of her ovarian cancer. The defendant acknowledged that she stopped embezzling only when confronted, but she claimed that she "started feeling really bad" about her actions "right after [she] got the last money."

In addition to this testimony, the trial court reviewed the presentence report and a report issued by the Tennessee Bureau of Investigation regarding the defendant's eligibility for diversion. The defendant had no criminal history. The report contained impact statements from the owners of Crown Marketing. Owners Phil Stieg and Rick Mak stated that the defendant took more than $70,000 in "actual 'cash'" but used the company's line of credit "to cover up the 'cash' that was missing," resulting in the company's having to "take out a $130,000 second mortgage" in order to stay in business. They noted that the company had treated the defendant "with extreme kindness," paying for extensive dental work, a new refrigerator, and a laptop for her children to use. They said that they were primarily interested in restitution because their "small business continues to struggle" as a result of the defendant's actions.

The trial court, in an exhaustive review of all the factors applicable to diversion consideration, concluded that although the defendant was amenable to correction, the circumstances of the offense weighed "very strongly" against a grant of diversion. The court noted in particular the continuous nature of the crime, observing that the defendant's "thieving over a period of time has caused a great amount of hardship to this company." The court observed that the defendant's criminal history, social history, physical history, and mental health history supported a conclusion that she was amenable to correction and that she would abide by the terms of probation. The court determined that the deterrence value of a grant of diversion weighed "[s]omewhat against" a grant of diversion. Again, the court cited the continuing nature of the crime: "[T]aking things over a period of time from an employer does create a breach of trust and it's a very difficult crime and it's a hard crime and I think it makes it very difficult to say that this should not be on your record." Finally, the court concluded that a grant of diversion would not serve the ends of justice. On the basis of these findings, the trial court denied judicial diversion.

In this appeal, the defendant contends that the trial court abused its discretion by refusing to place her on judicial diversion. The State contends that the denial of diversion

was appropriate.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A).

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A) (citing that court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

On appeal, this court must determine whether the trial court abused its discretion in failing to grant judicial diversion. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168. Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

Here, the record establishes that the trial court thoroughly reviewed the record and more than adequately considered all the factors relevant to diversion consideration. The trial court noted that some of the factors weighed in favor of a grant of diversion but ultimately concluded that the circumstances of the offense, the need for deterrence, and service of the ends of justice weighed "very strongly" against a diversionary sentence. The record supports the conclusion of the trial court. The defendant, granted a position of trust at Crown Marketing, stole a large amount of money from the company by forging checks and writing checks to herself over a period of months. As the trial court correctly pointed out, the defendant's illegal conduct was not a "one time thing" but instead an ongoing offense that abused a position of great trust and left Crown Marketing in poor financial condition. Despite the magnitude of her crimes, the defendant benefitted from considerable leniency in being allowed to plead guilty to a single reduced theft charge in exchange for a sentence of full probation. The record supports the trial court's decision to deny further largess in the form of judicial diversion.

-4-

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE